Mr. Kerry. Mr. Kerry. Mr. Kerry.  Mr. Kerry. May it please the court. Under this court's precedent, the failure to consider a significant mitigating circumstance is an abuse of discretion. Here, the board failed to consider three significant mitigating circumstances. First, the board failed to consider the adequacy of an alternative of a 60-day suspension. Second, the board failed to consider the history of Mr. Newsom's accusers having harassed him. And third, the board failed to consider Mr. Newsom's demonstrated potential for rehabilitation. Is it your position that if there's ever any lesser penalty proposed that the decision maker is stuck with that? No, that is not our position. Our position is if there is a lesser penalty proposed, then the board and the agency should discuss the adequacy of that lesser alternative and whether it would be, in the facts of this case, adequate or inadequate. But isn't it true that in the hierarchy of punishment that beyond 30 days suspension, it usually is contemplated that beyond that, termination would be the next step? Actually, Your Honor, I don't think that's the case here. Here, we've noted several cases on page 9 of our reply wherein penalties greater than 30 days were accepted by the board and by the agency, penalties of 60 days, 90 days, 120 days. And so, indeed, in this very case, the agency itself, at some point, thought a 60-day suspension was an adequate penalty. And there's a concession here by the agency representative that somebody in agency management thought that a 60-day suspension was sufficient. But along the lines of Judge O'Malley's question, what I'm having a little trouble understanding is that the deciding official on the board did explain that Mr. Newsom was only temporarily deterred from prior problems by the suspensions he had previously received. And they explained that's why they were terminating him, because it didn't seem as though he was deterred. So why doesn't that satisfy the need? Because your complaint is they didn't consider it. You're not arguing that they considered it and came to the wrong conclusion. Your argument is they didn't consider it, but why doesn't that demonstrate that they, in fact, did? Well, I think there's two difficulties with that. First is that that testimony was all proffered during the hearing. That did not make part of the agency's decision. So that would be a post hoc rationalization of the agency's decision. And the second difficulty is it's inconsistent with the deciding official's own testimony, wherein she stated, when asked, did you consider alternative sanctions, quote, I did not. And so there's an inconsistency. But she said, I did not because he had not previously been deterred. Isn't that what she said? Didn't she say that prior periods of time disciplining him, the timeouts he previously received, weren't long enough? Or they weren't long enough. That's your argument. But they were. But they could have been longer, and it would have worked. But she said that they didn't work to deter him from misconduct. So in the first instance, when she was first asked, she said she did not. And then in later testimony, when pressed, she did start explaining, oh, it's because he was not deterred. But I think it's important here also to recognize that even the board itself said she wrote what she wrote. And to look indeed at the decisions, I think if your honors would refer in the joint appendix to, for example, page 8359. This is the proposed suspension. This is the first instance of the agency proposing a suspension. And if you look on page 359, it says adequacy of alternative sanctions. And here it says, you have received prior warnings and or disciplinary actions for similar misconduct. These prior warnings and or disciplinary actions have only temporarily deterred your inappropriate actions. So this is the very decision that found a 60-day suspension adequate and sufficient. If you turn then to A355, here's the same official issuing a proposed removal. And if you look under the adequacy of alternative sanctions, you will note that it's verbatim the same language, that you have received prior warnings and or disciplinary actions for similar misconduct, et cetera. I don't understand what that is meant to demonstrate. It's meant to demonstrate that the same analysis that found a proposed suspension. Right, so she could have gone with a 60-day suspension. Correct. But she changed her mind and went with a removal. And I have to give enormous, overwhelming deference. So clearly she considered this issue. It's not a matter of her considering it. It's upon first initial impression she thought a 60-day suspension. And then on later impression, that same evidence she thought supported a termination. And I have to review the decision of whether or not it supports a termination with so much deference. It's crazy in this case. So how do I jump from giving her all that deference to the fact that she thought the same rationale could have supported 60 days means it can't possibly support termination? Well, I think for two reasons. First, there's no discussion in any subsequent agency decision of the 60-day suspension. It's your view basically if there's some action that's being canceled and replaced, that prior action is some kind of presumptive view of what the penalty should be. And the agency then has to explain why that first proposal wasn't good enough. I wouldn't say necessarily that it's presumptive. I would say that it is an alternative. I mean, I don't understand why we would even look at that first proposal because what's happened is they've changed their mind. And all that they have to do is explain on the second proposal that they've considered the Douglas factors and that they've viewed them all properly. And that's the point, Your Honor, I was trying to make before that if you look at the analysis under adequacy of alternative sanctions, their justification, which, by the way, does not reference the 60-day suspension. Well, this is where I think you get into trouble though because let's just assume that prior proposal is off the book. Then we're not even considering that. Then why isn't the final decision sufficient? Well, I think in this case, I think it is highly material, and this is a very unique factual circumstance because the prior proposal was on the book, that there was somebody that thought it was sufficient. So I think this case sets a lot of other cases apart. In fact, the government is not able to find or cite to any case where this has happened. So let me just ask you hypothetically. If that prior proposal that was rescinded wasn't on the table, would you even be here? Well, there are other – Would the removal be appropriate given that it was his fifth defense, I think? I think that under those circumstances, the agency would still have to consider alternatives. And if it was found, yes, indeed, you did consider the range of alternatives, then yes. But doesn't the decision reflect that they considered alternatives? Well, under this facts scenario, no. Under a hypothetical scenario, possibly. But under this scenario, you have – it's a very unique – How do you – I still don't get at how you don't think they considered that 60-day removal since they clearly knew about it and rescinded it and did a new proposal. I mean isn't it implicit that they thought the 60-day wasn't sufficient and wouldn't be a good enough deterrent and that no deterrent would be available so removal was the only option? Well, I think there's two issues there. We're making a lot of implicit assumptions about what the agency did, and all of the record evidence suggests – in fact, the agency's own testimony when first asked if she considered alternatives, she said she did not. So the testimony says no. You have a paragraph that is regurgitated through all of the decisions. It is verbatim identical. So it cannot be said that the same paragraph that supported a suspension now all of a sudden does not support a suspension. It's the same exact words. Where is the testimony wherein she said she didn't consider any other alternatives? That testimony is found at A435, and it's on lines – if you start at line 4, it says question. Okay, and you did consider whether there were any kind of alternative sanctions that might have been applied here. Seven, answer, I did not. Then she continues. Next sentence. The penalty generally goes up to a 30-day suspension to removal. After removal, I've never seen a suspension posed for more than 30 days. So she categorically did not consider anything beyond a 30-day suspension, notwithstanding the fact that a 60-day suspension was on the record. Now, in addition to the 60-day suspension, there were several other issues that were not considered. For example, Mr. Newsom's accusers had a history of harassing him. And, in fact, this testimony was proffered by Ms. Tita Greyer, and she testified that Ms. Kinchin, Ms. Walton, and Ms. Turner would all make fun of Mr. Newsom. They would yell across the cubicles about him, that he had no friends. And these facts, there was no disputing of these facts at the hearing. But even if we accept the proposition that that is true, that doesn't change the fact that he engaged in the conduct that he was being disciplined for. That's correct. It's a significant mitigating circumstance. So it's something else beyond the conduct or potentially involving the conduct that could explain why the conduct may have occurred or some other alternative. But the board specifically considered that. The fact that he was provoked doesn't change the fact that he shouldn't have committed this conduct and he has no rehabilitative potential. Well, I would disagree. I think the board did consider the provocation, which occurred immediately prior to the alleged incident, and that there was a longstanding dispute. So you're saying they considered the provocation but not the longstanding dispute. I mean you're cutting it pretty finely there. I mean that seems to me like opinion writing correction, not actual error. Well, there was – and I would say that there's no discussion of any of these facts. There's no discussion of them taunting him. There's no discussion of him making fun or that he had no friends. Isn't that all implicitly included in provocation? I would say no because the word provocation implies closeness in time. It implies something immediately preceded. Couldn't a decade-long disagreement between these employees in a tense working atmosphere provoke somebody into something? It could, but because the Douglas factor actually separately delineates provocation from harassment here, we have a situation where this clearly falls under the harassment rubric. I can see I'm into my time. Okay. Let's hear from the government. Thank you, Your Honor. How do I say your last name? Majerus. Majerus. Everyone else pronounces it. May it please the court. We ask that this court affirm the decision of the Merit Systems Protection Board as to the penalty of removal here as being within the tolerable limits of reasonableness as this court has held. Do we know why the 60-day suspension was revoked and the removal was replaced? Yeah, so we actually – excuse me. It was within the joint appendix of what happened. So here's the sequence. There was a proposed notice of 60-day suspension issued on May 5th, 2014. That was at page A141. The agency then, on August 13th, 2014, issued a letter saying that this proposal was being withdrawn, so it was canceled and pulled back. And we know from testimony that took place after the hearing. It's at page A452 of the joint appendix. As counsel noted, Ms. Chapman, who was the deciding official in the case, noted she said she didn't consider alternative sanctions, but that's really not true because when you look at page A452, she said upon my review of the 60-day file when I received it, the proposed disciplinary action did not match our pattern of progressive discipline, nor was enough weight, in my opinion, given to the fact that he had an extensive prior disciplinary record. But it does seem that her primary motivation here was that it didn't match this supposedly written-out progressive disciplinary statement. In other words, that you're supposed to go from 30 days to removal, and so she really didn't consider anything in between, did she? Well, no, I think based on her testimony, she did consider 60 days, but taking into account the prior disciplinary history, the fact that this was his fifth or sixth offense, depending on how you do the last chance agreement with his previous offense, that that was so far beyond what's listed in the IRS penalty guide. And this is provided within the record itself, specifically at page A291. And what's interesting is that it lists the appropriate penalty for the first through the third offenses. And for example, it includes under creating a disturbance, a workplace disruption, which is what we had here. It says for the third offense under just a minor or more limited disturbance that the range is a 15-day suspension to removal. Notably, though, it says that if there's been a significant disturbance, it only lists the appropriate penalty as removal. And that's only for the third offense. We're not talking about the third offense here. We're talking about the fifth, sixth offense. And I also think it's critical under these facts that the proposed notice of 60-day suspension was issued by Sharon Worthy, who was an operations manager in the compliance department. She's basically the more ground-level person who's reviewing this. She then withdrew the 60-day suspension and issued the proposed removal notice. And then that provided an opportunity for Mr. Newsom to then challenge that, which he did. He filed an oral reply and was given the opportunity to explain why he didn't feel he should be removed. And the agency considered that and decided that removal, given his past disciplinary history, given the extreme nature, the seriousness of the misconduct that took place, the fact that the folks were subject to it felt threatened, that given that and given his extensive disciplinary history, that removal was the only thing that was to be appropriate. It was the only form of discipline that matched the progressive discipline as outlined in the IRS penalty guide. But is that progressive discipline, is that a mandatory match? There were several cases cited in the reply brief that talked about higher levels of suspension. Right. I'd be happy to walk through those quickly because we believe they're all distinguishable. So these are noted at page 9 of the reply brief. The Wiggins case is distinct because in that case, and these all dealt with different offenses, in some cases arguably more egregious offenses, but there he agreed to a 60-day suspension in lieu of removal. So we had essentially a settlement between the parties. So I don't see how that case is illuminating to the circumstances here. The Crawford and Gibbs cases are old. They're from 1993 and 1984. And so different standards apply to that case as opposed to the IRS penalty guide applicable in this case 20 years later. And then the other case is cited, LaChance, that's a 1990 case that concerned the Navy. So we're not talking about the IRS's penalty guide limitations. So is it your position that that penalty guide is mandatory, that they can't consider anything above a 30-day suspension short of removal? I'm sorry. I guess I don't understand that. Are you saying that she wouldn't have been permitted to even consider a longer suspension than 30 days? No, that's not what I'm saying. I don't think that the record indicates that it's absolutely mandatory. It is a guide. And, of course, circumstances in every case are going to be different. For example, in this case, if we had a situation where the appellant had one offense where he'd gotten three days off, being removed for a subsequent offense would seem to test the boundary of what is a reasonable penalty. But when you have the kind of disciplinary history that we have here, the penalty guide certainly suggests removal. But when you factor all the various Douglas factors into the equation, which we feel that the deciding official did, she reasonably concluded that removal was the only appropriate penalty. It certainly wasn't grossly disproportionate to the offense, given what happened. What about his argument that there was just a failure to consider, really, all the other circumstances? In other words, this was the workplace where people weren't very nice to each other, period, and he was picked on just like he picked on them. There's certainly a lot of testimony from the various parties. I think what's critical, of course, bearing in mind that credibility determinations are given a high level of deference, as Judge Moore noted. In this instance, you had testimony from witnesses that were on the agency's behalf and witnesses for Mr. Newsom. What's critical to note is Mr. Newsom never denied the conduct took place. He essentially tried to argue it was a polite exchange, but that doesn't – No, but I think that Judge O'Malley's question goes to whether or not there's a problem with the agency not considering the Douglas factor related to harassment and provocation properly. So that really – where can I see in the board's decision that they clearly understood and took into account in their assessment of penalty potential harassment going on in the workplace? So I think this gets to Judge Hughes' distinction that it's really hard to draw a temporal line between provocation and harassment. What the board held was that we know that there was provocation. Where? If you can bear with me one moment, I can point you to it. It's on page 814 of the record, and there may be other references to it, but this is the one that I recall. It says in the first full paragraph in 814, After considering the evidence, I find the appellant's misconduct was serious and will not displace management's responsibility in maintaining employee discipline and efficiency. The appellant's years of service and outstanding performance do not outweigh his prior discipline, which included a 30-day suspension. And then it talks about the employee's testimony, and it says the fact that he may have been provoked does not excuse his behavior, and the fact that he had been suspended previously shows he has no rehabilitative potential. So what I think is critical to note is Mr. Newsom testified this was just a polite exchange. He had a very different recollection of what happened, but his own witnesses counteracted that. Well, he didn't say it was a polite exchange. He said that she said mean things to him. So he didn't, I mean, he said he was polite. I don't think that he ever testified that she was polite. Right, right. But I guess the witnesses that testified on behalf of Mr. Newsom testified it was a very loud exchange. It was something they were talking about days after the fact. And while I agree that Mr. Newsom didn't necessarily testify it was just a quiet, polite exchange, his story doesn't connect with the fact that folks were talking about it the next day and the fact that, I mean, for example, one of his colleagues who was wearing headphones took them off because she could hear the yelling. It just doesn't seem to square up with Mr. Newsom's testimony. But aside from that— Maybe that was the woman's yelling. It very well could have been. But that's why the agency—that's, I think, why the board has given so much discretion to weigh credibility. There's no question that the board took testimony from everyone who was involved and considered all the various perspectives and decided in the end that Ms. Kinchin, Ms. Turner, the folks on behalf of the agency had no reason to lie and that their stories were consistent and that a lot of Mr. Newsom's witnesses supported their story. And so you can certainly argue it either way, but I think that's why the discretion is accorded to the board to weigh those various credibility determinations. And I don't think there's a basis here on which to reverse that decision. Anything further? Do you have any further questions? Mr. Cooley, do you want to use the rebuttal slide? I just want to make three quick points. First of all, my colleague here noted that there were a number of facts and circumstances that would have supported the original determination penalty. But I will note that all of those facts and circumstances, the removals and so forth, were all before the agency when it made its proposal for a 60-day suspension. There was no change in the facts and circumstances as between the suspension and the removal. Second of all, my friend mentioned the grossly disproportionate standard. I think it's important to note that there's two different types of cases here. You have the Van Fossen case and the Miguel case wherein this court actually puts its thumb on the scale, so to speak, given the severity of the facts. It found that the actual penalty was so disproportionate to the conduct that it found it grossly outweighed and vacated and remanded for imposition of a lesser penalty. Now contrast that, for example, with the Malloy case. In that case, the court found that there was a failure to consider certain circumstances, but it simply was vacated and remanded and did not dictate that there would be an imposition of a lesser penalty. So this court has the ability, if it still finds that the offense was so minor as to the penalty, that the court can actually put its thumb on the scale, so to speak. But even if not, this court can still vacate and remand and request that the board conduct a proper Douglas analysis and consider the mitigating circumstances that in this case were not considered. And then finally, we'd like to note that we're not raising credibility issues. This appeal is not about credibility. We are not disputing credibility. It is all about the failure to consider significant mitigating circumstances. Any further questions? Thank you. Okay. Thank both counsel for their argument. The case is taken under submission. That concludes our arguments for today.